**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA., <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY BLUMBERG, <br><br> Defendant. | Crim. Action No. 14-458 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge

Pending before the Court is Defendant Anthony Blumberg's *in camera* motion regarding his alleged attorney-client privilege over communications with counsel for Non-Party ConvergEx ("ConvergEx" or the "Company"). Mr. Blumberg filed the pending motion on December 7, 2016. ConvergEx filed its opposition to same on December 23, 2017, and Mr. Blumberg filed a reply on January 20, 2017. On March 1, 2017, Mr. Blumberg filed a supplemental letter brief to alert the Court to information gleamed through newly produced evidence. ConvergEx filed a response to Mr. Blumberg's supplemental letter on March 10, 2017. The Court has considered all of the papers and exhibits before it. For the reasons stated herein, the Court denies Defendant's motion.

**I.    Summary of Arguments**

Mr. Blumberg now seeks a finding from this Court that his statements to the attorneys of Bracewell LLP at two meetings in August 2011 (the "Bracewell Meetings"), are protected by Defendant's attorney-client privilege. More specifically, Defendant seeks a finding that it is Mr.

1

Blumberg individually, as opposed to ConvergEx, that may waive the privilege with respect to these statements.

In summary, Defendant argues that he reasonably believed that Bracewell was representing both the Company and Defendant individually, during the time that he met with Bracewell attorneys at the Company's office. In support of this belief, Defendant cites to notes and statements taken and made by the Bracewell attorneys and the Government, which would suggest that Bracewell was, in fact, engaged in a dual representation of the Company and its employees. Defendant has also submitted an affidavit that summarizes the facts leading up to the Bracewell Meetings. Mr. Blumberg denies ever having been warned by Bracewell attorneys, the Company's General Counsel, or anyone else for that matter, that Bracewell did not represent him individually.

ConvergEx opposes Defendant's motion. ConvergEx maintains that Defendant does not hold a personal privilege over any portion of the statements made during the Bracewell Meetings. According to the Company, the Bracewell attorneys administered standard *Upjohn* warnings at the beginning of both meetings, advising Mr. Blumberg, among other things, that Bracewell did not represent him and that the Company, as opposed to Defendant, held the attorney-client privilege. Further, ConvergEx maintains that even if Defendant could show that he holds the privilege over statements made during the Bracewell Meetings, "he would only hold a personal privilege over communications with Bracewell that concerned personal advice." (Op. Br. at 21).

## II.   Discussion

### A. Legal Standard

The attorney-client privilege is defined as a "client's right to refuse to disclose and to prevent any other person from disclosing confidential communications between the client and the attorney." Black's Law Dictionary (10th ed. 2014). "The purpose of the attorney-client privilege

2

'is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in observance of the law and administration of justice.'" *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F. 2d 120, 124 (3d Cir. 1986) (quoting *Upjohn v. United States*, 449 U.S. 383, 389 (1981)).

To that end, corporations, just as individuals, are entitled to the benefit of the attorney-client privilege. *Upjohn*, 449 U.S. at 390. However, because "[a]s an inanimate entity, a corporation must act through agents," unique problems arise with respect to the attorney-client privilege over statements made by agents of a corporation. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). As in the case at bar, questions may arise as to who—be it the corporation or the individual agent of the corporation—holds the privilege. The answer to this question is critical, because only the holder of the privilege may waive the privilege.

The party asserting the privilege shoulders the burden of proving the existence of the privilege. *See In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990). Moreover, "[Federal Rule of Evidence] 501 requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 230 (3d Cir. 2007).

### B. *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*

In *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.* ("*Bevill*"), the Third Circuit provided an analytical framework through which courts should address competing claims of attorney-client privilege asserted by both a corporation and the corporation's agent. 805 F.2d 120 (3d Cir. 1986). *Bevill* involved the reorganization and liquidation in bankruptcy of two corporations, respectively entitled AMC and BBS. *Id.* at 121. The day after AMC filed its

bankruptcy petition, the "SEC filed a civil complaint in the district court alleging fraud against AMC, BBS, and the principals of the corporations." *Id.* at 122.

After the principals became aware of the financial distress of the corporations, they proceeded to meet with the law firm of Hellring, Lindeman almost daily, between the dates of March 25, 1985 and April 7, 1985. *Id.* at 121. These discussions can be broken down into three "phases." First, during the period of March 25, 1985 through March 31, 1985 ("Phase 1") when discussions first began, a principal by the name of Schulman explained to counsel that "he was seeking both personal and corporate legal advice." *Id.* Then, on March 31, 1985, counsel was formally retained to represent BBS; however, from the period of March 31st through April 4, 1985 ("Phase 2"), the law firm was considering whether it would also personally represent the principals of BBS. *Id.* Ultimately, on April 4th, ("Phase 3") the law firm advised the principals that they should retain separate representation. *Id.*

During subsequent depositions relating to the bankruptcy cases, principal Schulman refused to answer certain questions posed by the AMC trustee on the basis of attorney-client privilege. *Id.* Thereafter, the trustees moved for an order directing both the law firm and Schulman "to testify about the substance of the meetings insofar as they related to the affairs of the two corporations and Schulman's activities as a director or officer of the corporations." *Id.* at 123. The district court granted the trustees' motions in part.

In rendering this determination, the district court adopted the following five-part test "that a corporate officer must satisfy . . . to assert a personal claim of attorney-client privilege as to communications with corporate counsel." *Id.*

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with

4

> them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

*Id.* (quoting, in full, *In re Grand Jury Investigation, No. 83-30557*, 575 F. Supp. 777 (N.D.Ga. 1983)).

As to the Phase 1 communications that occurred prior to the time that the law firm agreed to represent BBS, the district court held that these communications were privileged as to the principals. *Id.* The district court agreed with the principals that the entirety of these communications were privileged because "the corporate communications were indistinguishable from those that related to their personal legal problems." *Id.*

As to the Phase 2 and Phase 3 communications, which occurred *after* the law firm agreed to represent BBS, the Court rejected the principals' claim of blanket privilege. *Id.* Instead,

> [t]he district court ordered [the law firm] to testify as to all communications about the corporations and the roles and functions of the officers that took place after the law firm agreed to represent BBS. It further held that no questions could be asked concerning separate representations or the officers' potential personal liabilities, unless the communications also related to the business and assets of the corporations or the roles of the principals in the corporations.

*Id.* at 123-24. The principals appealed the district court's decisions with respect to the Phase 2 communications only. *Id.* at 124. Specifically, the principals argued that "because their personal legal problems were inextricably intertwined with those of the corporations, disclosure of discussions of corporate matters would eviscerate their personal privileges." *Id.*

On appeal, the Third Circuit affirmed the district court's ruling. The Circuit reasoned as follows:

> The appellants' argument . . . does not pay sufficient attention to the fact that under existing law, any privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer. Because a corporation can act only through its agents, a corporation's privilege consists of communications by corporate

5

> officials about corporate matters and their actions in the corporation. A corporate official thus may not prevent a corporation from waiving its privilege arising from discussions with corporate counsel about corporate matters.

*Id.* at 124-25. The Third Circuit noted that the district court's order allowed for the possibility that some of the Phase 2 communications may be protected by the principal's privilege so long as those communications related the principal's *personal* liabilities, as distinguished from the principal's "role as corporate officers." *Id.* at 125. The Third Circuit also sanctioned the district court's use of the five-factor test.

### C. Application of *Bevill*

Both ConvergEx and Defendant maintain, albeit for separate reasons, that the Court need not apply the *Bevill* factors to determine whether Mr. Blumberg can assert the privilege over Defendant's statements during the Bracewell Meetings.

According to ConvergEx, the Court need not engage in the *Bevill* analysis "because the overwhelming weight of the evidence shows that Defendant was given proper *Upjohn* warnings." (Op. Br. at 12-15). ConvergEx has submitted, among other supporting exhibits, declarations of three Bracewell attorneys who participated in Defendant's interviews and the attorneys' contemporaneous notes and formal interview memoranda—all of which reflect that Defendant was given proper *Upjohn* warnings. (Id. at 12-13). ConvergEx urges that, in light of this evidence that Defendant was advised that: "(a) Bracewell was the Company's counsel, not his personal counsel; (b) the interview was privileged and confidential and the Company was the holder of the privilege; and (c) the Company could decide to waive the attorney-client privilege and share the contents of the interview with third parties including the Government," there is no need for the Court to engage in the *Bevill* analysis. (Id.).

The Court has reviewed all of the exhibits and declarations submitted by ConvergEx. The Court notes, however, that Mr. Blumberg denies ever having been given the standard *Upjohn* warnings. Mr. Blumberg has submitted competing declarations and exhibits in support of his position with respect to these warnings. Because the Court declines to issue a credibility determination as to whether Bracewell attorneys in fact provided Defendant with *Upjohn* warnings, the Court will not sidestep *Bevill* on these grounds.

Defendant, for his part, argues that the five-factor *Bevill* test is inapplicable to this case. (Def.'s Mov. Br. at 19-21). According to Mr. Blumberg, "the *Bevill* test does not apply to [his] statements at the Bracewell Meetings because they were not made in his role as a corporate officer. Rather, the Bracewell Meetings occurred based on Mr. Blumberg's discussion with Mr. Schneider [, the Company's General Counsel,] that the company would provide him with counsel following the FBI encounter." (Id. at 20-21).

Yet, whether or not the statements made at the Bracewell Meetings were, in fact, made by Mr. Blumberg in his role as a corporate officer can only be answered by application of the *Bevill* factors. The *Bevill* test applies once counsel has been retained to represent the company. *See Bevill*, 805 F.2d at 123; *see also Montgomery Academy v. Kohn, et al.*, 82 F. Supp. 2d 312, 316 (D.N.J. 1999) ("The [*Bevill*] court found that communications to counsel by the officers prior to retention of the law firm by the corporation were privileged, but those made after retention by the corporation may not have been privileged once the corporation has waived the privilege.").

As Defendant notes, Bracewell represented in an August 9, 2011 e-mail to the Government that it "represent[ed] BNY Convergex Group, LLC, its officers, directors, employees, subsidiaries and affiliates and any employees of its subsidiaries and affiliates." (Levin Decl., Exh. C). Therefore, it is undisputed that, at the time of the Bracewell Meetings, Bracewell was, at a

7

minimum, representing ConvergEx. (See Def.'s Reply Br. at 6-7). Accordingly, to determine whether Mr. Blumberg holds a personal privilege over any statements that he made to corporate counsel (i.e., Bracewell), the Court must apply the five-factor *Bevill* analysis.

The *Bevill* factors are conjunctive. Therefore, if an individual fails to meet any one of the five factors, he cannot assert a claim of privilege. In this case, ConvergEx and Defendant heavily dispute a number of factual issues that bear on the Court's assessment of the *Bevill* factors. For example, the Company and Defendant dispute whether Defendant was given *Upjohn* warnings and whether it was clear to Bracewell attorneys that Mr. Blumberg was seeking personal advice. Both of these disputed facts are highly relevant to several of the *Bevill* factors. However, the Court does not need to resolve these factual issues in order to issue a determination as to whether Defendant satisfies *Bevill*. That is, regardless of Defendant's ability to succeed on the first four factors, the Court finds that Mr. Blumberg cannot make a showing as to the fifth factor of the *Bevill* analysis—specifically, he cannot show "that the substance of [his] conversations with [counsel] did not concern matters within the [C]ompany or the general affairs of the [C]ompany."

As to the fifth factor, Defendant states that he "consulted with counsel for the purpose of assessing his personal obligations and potential for liability following his encounter with the FBI and the FBI's direction to him that he would be receiving a personal subpoena." (Def.'s Mov. Br. at 22). The pertinent question with respect to the fifth factor, however, is not *why* Defendant consulted with corporate counsel, but rather the substance of those communications. To that end, Defendant further states that "the issues discussed at the Bracewell Meetings were limited to those related to the topics raised in the FBI encounter." (Id.).

Yet, as memorialized in the FBI 302 memorandum summarizing the agents' interview of Defendant at his home on August 8, 2011, that interview touched upon general matters of

8

Company affairs. (Levine Decl., Exh. A). Specifically, Blumberg was asked about the term "spread income" as well as the nature of ConvergEx's services. (Id.). Indeed, in response to this line of questioning, Mr. Blumberg advised the agents that "it might be best to go through the Company" and "that he would feel more comfortable if General Counsel was involved in any further questioning." (Id.). Therefore, the Court rejects Defendant's argument that, because the topics discussed at the Bracewell Meetings were the same as those discussed during the FBI Interview, the topics do not fall within the Company's affairs.

Defendant further argues that he satisfies the fifth factor because "Mr. Blumberg and Bracewell discussed Mr. Blumberg's potential for criminal exposure." (Def.'s Reply Br. at 8). Mr. Blumberg is specifically referencing counsel's statement to him that he was a "fact witness," a label which Defendant understands to be associated with a lack of personal criminal liability. (Def.'s Reply Br. at 8; Levine Decl., Exh. B). However, the fact that Bracewell made one statement sounding in personal legal advice does not give Defendant the authority to assert a blanket claim of privilege over all statements made during the Bracewell Meetings, particularly where the evidence before the Court strongly indicates that the substance of the Bracewell Meetings pertained to the general affairs of the corporation.

Because Defendant cannot meet the fifth factor of the *Bevill* analysis, the Court finds that it is ConvergEx, rather than Defendant, who holds the attorney-client privilege over communications made during the Bracewell Meetings. As such, the Company, and not Defendant, may waive that privilege.

### D. Defendant's Supplemental Filing

Lastly, the Court finds it prudent to address the implications of the exhibits attached to Defendant's supplemental filing. In said filing, Defendant provided the Court with handwritten

notes taken by attorneys for the Government pertaining to the Government's communications with counsel for ConvergEx. (Def.'s Supp. Br.). As explained by Defendant, "[t]hese notes reflect that Bracewell advised the Government on multiple occasions that it represented ConvergEx employees in their individual capacities, that it intended to provide personal legal advice to the individual employees, and that it would continue to represent the individuals until conflicts prohibited the multiple representation." (Id. at 1). Mr. Blumberg further states that this evidence, in conjunction with Bracewell's e-mail to the Government in which Bracewell stated that it represented the Company as well as its employees, "conclusively establish that Bracewell formed a personal attorney-client relationship with Mr. Blumberg." (Id. at 2). Defendant's heavy reliance on these proofs is misplaced.

The question before the Court is not whether an attorney-client relationship existed between Bracewell and Mr. Blumberg. Rather, the related, yet distinct question posed by Defendant's motion is whether Defendant may exercise the privilege with respect to statements made during the Bracewell Meetings. This distinction is significant. That is, even if the Court were to find that, during the time of Bracewell Meetings, Mr. Blumberg was represented by Bracewell, that finding would not end the Court's analysis because Defendant would not be permitted to assert the attorney-client privilege over all statements made during the Bracewell Meetings. *See Bevill*, 805 F.2d at 124-25 ("A corporate official thus may not prevent a corporation from waiving its privilege arising from discussions with corporate counsel about corporate matters."). Where an attorney can be said to represent a corporation's agent on an individual basis as well as the corporation itself, "the corporation's privilege prevails to the extent the privileged communications derive from discussion of corporate matters." *Transcontinental Refrigerated Lines, Inc. ex rel Young v. New Prime, Inc.*, 13-cv-2163, 2014 WL 2471936, *7 (M.D. Pa. June 3,

2014). Accordingly, Defendant would only be permitted to exercise the privilege over communications that relate to his personal liability, as distinct from any liability of the Company.

In this case, and as discussed above with respect to the fifth *Bevill* factor, the statements made during the Bracewell Meetings pertain to general company affairs. Accordingly, and given the fact that it is undisputed that Bracewell represented the Company at all relevant times, it is the Company that may waive the privilege with respect to those statements. The fact that these statements may be intertwined with Mr. Blumberg's personal liability does not alter this finding. *See Bevill*, 805 F.2d at 125 (noting that the district court "allowed for the possibility that appellants could demonstrate that some of the communications after March 31st were personal and protected communications relating to the principals' personal liabilities, *except insofar as* they were related to their role as corporate officers").

### III. Conclusion

For the reasons stated herein, Defendant's motion is denied. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:   March 27th, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE