# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANTHONY BLUMBERG,<br><br>Defendant. | Criminal Action No.: 14-458 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

Pending before the Court is non-party movant Bank of New York Mellon's ("BNYM") motion to quash ("BNYM's Motion") Defendant Anthony Blumberg's ("Defendant") subpoena *duces tecum* made pursuant to Federal Rule of Criminal Procedure 17(c). (ECF No. 218). Defendant submitted opposition on September 15, 2017, (ECF No. 225), and BNYM submitted a reply on September 27, 2017, (ECF No. 227). The Court has considered all of the papers and exhibits before it. For the reasons stated herein, the Court grants BNYM's Motion.

## BACKGROUND

ConvergEx Group, LLC ("ConvergEx") was a brokerage company that owned several subsidiaries in both the United States and foreign countries. (ECF No. 100 ("Superseding Indictment") ¶ 1(a)). One of ConvergEx's shareholders was BNYM, which owned 35 percent of ConvergEx and had an ownership interest in most of the subsidiaries. (ECF No. 225-2 ¶ 14). Defendant was an Executive Managing Director of ConvergEx and the Chief Executive Officer of its Bermuda subsidiary from 2006 through August 2011. (Superseding Indictment ¶ 1(h)). The

Government alleges that Defendant and others misrepresented the income of trade mark-ups and mark-downs in order to hide the practice of taking the income from ConvergEx's clients. (*Id.* ¶¶ 3–5).

While investigating these alleged criminal acts, the Government interviewed ConvergEx and BNYM, which were both represented by Richards, Kibbe & Orbe ("RK&O") from August 17, 2011 to October 5, 2011. (ECF Nos. 218, 225 (conceding this point)). During the seven week period that RK&O represented both companies, it participated in meetings with the Government, at which ConvergEx's co-counsel Bracewell Giuliani LLP ("Bracewell") was also present. (ECF No. 198-2). On October 6, 2011, RK&O ceased its representation of ConvergEx, but continued to represent BNYM. (ECF No. 218). In its role as counsel for BNYM, RK&O attended certain meetings between ConvergEx's counsel and the Government as well as certain witness interviews and other forms of cooperation. (*Id.*). One example of BNYM's cooperation, which occurred in March 2014, involved RK&O identifying to the Government 464 documents that were "most critical" in showing false statements. (ECF No. 225-2). As a result of this investigation, ConvergEx entered into a deferred prosecution agreement with the Government on December 12, 2013, and Defendant was indicted on August 7, 2014. (ECF No. 1).

On June 7, 2016, the Court ordered that an evidentiary hearing be held to address "the *exact relationship between the Government and ConvergEx* with respect to their cooperation in the review, production, and creation of documents in this case." (ECF No. 113, at 2 (emphasis added)).[1] The Court suggested that ConvergEx's motivations for cooperating were outside the scope of the hearing, (ECF No. 150), and the Government informed the Court that it will not

---

[1] The Court has adjourned the date of the evidentiary hearing until after this motion is addressed. (ECF No. 214).

question witnesses on ConvergEx's motivation or decision to cooperate, (ECF No. 206, at 2). In preparation for the hearing, the Government was directed to produce, among other things, all materials related to ConvergEx's cooperation. (ECF No. 125, at 5). Over the last year, Defendant has also received similar hearing-related materials from non-parties ConvergEx, Bracewell, Schulte Roth & Zabel LLP, and Wilmer Hale LLP. (ECF No. 126). These materials consisted of notes, emails, privilege logs, interview memoranda, and meeting records between the Government and counsel for ConvergEx. (*See* ECF Nos. 144, 198-1, 206).

After receiving this information, Defendant requested the Court issue a subpoena on BNYM. (ECF No. 199-2). The subpoena seeks three categories of documents from the period of 2004 to the present, including:

1. All Communications between or among BNYM, Richards Kibbe & Orbe, ConvergEx, or their attorneys and agents, and the Government relating to the Investigation, including, but not limited to, all Documents relating to such Communications.

2. All Communications and/or Documents relating to the decision to resolve liability or potential liability on behalf of ConvergEx or any affiliated entities or individuals, including, but not limited to, any Communications and/or Documents relating to the decision to cooperate with the Government, and all underlying or related Materials.

3. All Documents relating to any interviews and/or meetings (including board meetings) relating to the Investigation in which BNYM and/or Richards Kibbe & Orbe was a participant, including, but not limited to, any interviews of current and former ConvergEx employees relating to the Investigation, and all underlying or related Materials.

(*Id.*).

The Government moved to quash the subpoena, (ECF No. 199), but the Court authorized Defendant to serve it on BNYM, with the understanding that BNYM could subsequently file its own motion to quash, (ECF No. 205). Accordingly, Defendant served the subpoena, and BNYM filed the current motion.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17(c) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designate." Fed. R. Crim. P. 17(c)(1). However, the decision whether to enforce a subpoena under Rule 17(c) is within the Court's discretion. *United States v. Baroni*, No. 15-193, 2015 WL 9049528, at *2 (D.N.J. Dec. 16, 2015). Upon motion, "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Notably, "Rule 17(c) was not intended to be a broad discovery device." *United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) (questioned on other grounds). To that end, a defendant seeking to serve a third-party witness to produce documents pursuant to a subpoena *duces tecum* must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (footnotes omitted).

Thus, a subpoenaing party must clear three hurdles in order to carry his or her burden: (1) relevance, (2) admissibility, and (3) specificity. *Id.* at 700.

## ANALYSIS

BNYM asserts three arguments against Defendant's subpoena: (1) that the three requests are not relevant to the narrow focus of the hearing; (2) that the language of the subpoena is too broad and therefore lacks specificity; and (3) that some of the information requested is not admissible under the work product doctrine. The Court will discuss each argument in turn.

## A. Relevance

The Court grants BNYM's Motion because Defendant's requests are both irrelevant to the issue addressed at the hearing and duplicative to material he has already received. The first *Nixon* factor is relevancy. *Nixon*, 418 U.S. at 700. "Relevancy" with respect to documents sought by a subpoena *duces tecum* under Federal Rule of Criminal Procedure 17(c) is not a probative relevancy, since it cannot be known in advance whether documents produced will actually advance the investigation, but is a relevancy to the subject matter of the investigation. *In re Morgan*, 377 F. Supp. 281, 285 (S.D.N.Y May 29, 1974). This Court has repeatedly stated that the sole purpose of the upcoming hearing is the "very narrow" issue of ConvergEx's relationship to the Government. (ECF Nos. 113, 205, 206). Specifically, the Court is looking to determine "the extent to which the Government outsourced and/or delegated discovery and investigation tasks to ConvergEx." (ECF No. 113). This Court has already suggested to Defendant and the Government that the hearing is not about ConvergEx's motivation in cooperating. (*See* ECF No. 150 ("isn't really what we are looking at is what was the nature of this cooperation, what shape did that take, not the reason why [ConvergEx] cooperated?")). As discussed below, the Court finds that none of the three requests are relevant to the narrow issue of the hearing.

### 1. Request One

The Court finds that Request One is irrelevant to the hearing because it is duplicative of information Defendant has already received. Request One seeks communications between BNYM, RK&O, or ConvergEx, on the one hand, and the Government, on the other, related to the investigation. (ECF No. 199-2). BNYM points out that any documents in its possession regarding communications between the Government and ConvergEx would have already been produced to Defendant by the Government and ConvergEx. (ECF No. 218-1, at 19). Both the Government

5

and ConvergEx have already produced thousands of documents regarding the investigation, including email communications between RK&O and the Government that do not include ConvergEx. (ECF No. 194). Moreover, this Court has already ruled that the numerous documents produced by the Government and ConvergEx "can and will assist the Defendant in assessing the relationship between the Government and ConvergEx." (*Id.*). Furthermore, BNYM asserts that any communications between RK&O and the Government not already produced took place after RK&O stopped representing ConvergEx, and thus would pertain only to BNYM's cooperation with the Government, not ConvergEx's. (ECF No. 218-1, at 21).

In response, Defendant claims that BNYM is not excused from complying with the subpoena on the basis that other parties have already produced large quantities of documents. (ECF No. 225, at 11). Furthermore, Defendant points to BNYM's shares in ConvergEx and its assistance in the investigation to argue that BNYM took on fundamental investigatory tasks in ConvergEx's cooperation, and therefore BNYM "may" possess further relevant information. (*Id.*, at 12). Defendant gives two illustrations to support his argument. First, RK&O sat in on over fifty meetings with ConvergEx and the Government pertaining to the investigation, including some post-dating its representation of ConvergEx. (*Id.*, at 7). Second, BNYM provided key information in the Government's investigation, such as a list identifying 464 documents that revealed false statements in March 2014. (ECF No. 225-2). However, these illustrations do not indicate that BNYM has any relevant information related to the narrow issue of the hearing not already in Defendant's possession.

Defendant is correct that BNYM is not excused from production based on documents produced by other parties. Nevertheless, Defendant has made no showing that BNYM possesses relevant information necessary to ascertain ConvergEx's relationship with the Government that

was not already produced to him. *See Nixon*, 418 U.S. at 699–700 (stating that, in order for a subpoena *duces tecum* to be granted, the subpoenaing party must show that the information is "not otherwise procurable"); *see also United States v. Poindexter*, 725 F. Supp. 13, 30 (D.D.C. 1989) (denying subpoena request partly on grounds that information sought was cumulative to information already provided). This conclusion is based on the fact that, as it pertains to ConvergEx's cooperation, BNYM's contribution was limited to ConvergEx's participation in the matter. (*See* ECF Nos. 225-5, at 2 ("BNYM has not had the ability . . . to control or direct the day-to-day management, policy, or operations of ConvergEx."); 227 at 4 (stating that although BNYM attended meetings and calls between ConvergEx and the Government, it was not involved in the day-to-day decision-making of ConvergEx or its counsel with regard to ConvergEx's cooperation with the Government)). Thus, any information possessed by BNYM would also have been possessed by the Government and/or ConvergEx, and would have already been produced by those entities in discovery, making this request duplicative of information in Defendant's possession. Even Defendant cannot state a non-duplicative document he expects to gain from the subpoena, only the possibility that relevant information may exist. (*See* ECF No. 225, at 11 ("BNYM . . . may have even more communications reflecting ConvergEx's cooperation with the Government.")).

Furthermore, BNYM's assistance in the investigation, such as the production of the March 2014 documents, indicated standard corporate cooperation for *its own* benefit, not ConvergEx's. (ECF No. 227, at 2 (emphasis added)). BNYM's separate interactions and relationship with the Government is irrelevant to the limited issue of the hearing, which is *ConvergEx's* relationship to the Government. The Court sees no reason to hold that BNYM's relationship with the Government is pertinent to ConvergEx's relationship to the Government as they are separate entities.

7

Therefore, Defendant's allegations against BNYM are not enough to enforce the subpoena. Based on this reasoning, the Court grants BNYM's Motion in regard to Request One.

2. Request Two

The Court finds Request Two irrelevant because ConvergEx's decision to cooperate is outside the scope of the hearing. Request Two seeks communications relating to ConvergEx's decision to cooperate with the Government. (ECF No. 197). As stated above, ConvergEx's motivation for cooperating with the Government is not an issue the hearing seeks to address. (ECF No. 150, at 102 ("isn't really what we are looking at is what was the nature of this cooperation, what shape did that take, not the reason why [ConvergEx] cooperated?")). Rather, the only relevant issue is "the exact relationship between the Government and ConvergEx" in regard to "the extent to which the Government outsourced and/or delegated discovery and investigation tasks to ConvergEx." (ECF No. 113). Request Two specifically concerns ConvergEx's motivation in deciding to cooperate, and is therefore outside the scope of the hearing.

Defendant does not agree that his request is outside the scope of the hearing because the Government's August 26, 2016 letter to the Court identified an "Audit Committee Council" witness who will testify at the hearing about ConvergEx's "decision to cooperate with the Government." (*See* ECF No. 225-6). Based on this letter, Defendant concludes that Request Two seeks material directly relevant to the testimony offered at the hearing. (ECF No. 225, at 14). However, as Defendant is aware, the Government subsequently informed the Court that it would not explore ConvergEx's motivation for cooperating at the hearing, making this topic a nonissue. (ECF No. 206, at 2 (acknowledging that the Government represented in the September 12, 2016 hearing that it does not intend to ask ConvergEx's counsel questions as to ConvergEx's motivation in cooperating)). Accordingly, Defendant's argument is moot, as both the Government and this

8

Court have specifically stated that ConvergEx's motivations for cooperating will not be discussed at the hearing. Therefore, the Court grants BNYM's Motion in regard to Request Two on relevance grounds.

3. Request Three

The Court finds that Request Three is broad and duplicative in light of the narrow focus of the hearing and the information already provided. Request Three seeks "[a]ll Documents relating to any interviews and/or meetings relating to the Investigation in which BNYM and/or Richards Kibbe & Orbe was a participant." (ECF No. 199-2). This includes "any interviews of current and former ConvergEx employees relating to the Investigation." (*Id.*). The "Investigation" is broadly defined as any of the investigations conducted by the Government or ConvergEx as it pertained to any and all cases brought by the Government and the Securities Exchange Commission ("SEC"), including cases against two other ConvergEx employees besides Defendant. (*See id.*, at 2). BNYM argues that the term "Investigation" is too broad because it is not limited to the criminal action against him or ConvergEx but rather includes proceedings against two other ConvergEx employees. (ECF No. 218-1, at 23). This definition, BNYM alleges, will incorporate copious documents that have nothing to do with the limited issue addressed in the hearing. (*Id.*). Defendant counters that the term "Investigation" relates to the single, coordinated Government investigation into ConvergEx, which has led to multiple related actions. (ECF No. 225 at 14). He further contends that BNYM should know which documents the subpoena refers to because BNYM was involved in most aspects of the Government and SEC's investigations. (*Id.*).

The Court agrees with BNYM that the definition of "Investigation" is too broad because it sweeps in documents that are not related to Defendant's case, let alone the narrow issue addressed in the hearing. *See U.S. v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013)

9

("[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*."). Defendant's argument that BNYM will know what the request is referring to does not convince the Court that Request Three is narrowly tailored to seek relevant information. Additionally, to the extent that the subpoena requests "any interviews of current and former ConvergEx employees relating to the Investigation," those documents are duplicative of materials already produced by the Government and ConvergEx under the same reasoning stated at *supra* A.1. Accordingly, the Court finds that Request Three is irrelevant and grants BNYM's Motion in regard to this request. Moreover, even if the Court was to find that any or all of the three requests were relevant, the Defendant's subpoena would still fail on specificity and admissibility grounds as discussed below.

## B. Specificity

The Court finds that the subpoena does not reasonably specify the information contained or believed to be contained in the documents sought. Besides being relevant, the requests in a subpoena *duces tecum* must be specific in order to be enforcable. *See Nixon,* 418 U.S. at 700; *see also U.S. v. Onyenso*, No. 12-602, 2013 WL 5322651, at *1 (D.N.J. Sept. 20, 2013) (stating that a subpoenaing party "must show the evidentiary nature of the requested materials with appropriate specificity and do more than speculate about the relevancy of the materials being sought."). In order to satisfy this burden, a Rule 17(c) subpoena must "reasonably specify the information contained or believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up." *Mendinueta-Ibarro,* 956 F. Supp. 2d at 513. Thus, a subpoena broadly requesting "any and all" relevant materials would be invalid as a catch all provision akin to the "fishing expedition" prohibited in *Nixon. Id.*

Defendant asserts that he has met his burden because he made specific requests for information that he knows exists, like documents pertaining to BNYM's meetings and calls with the Government and ConvergEx. (ECF No. 225, at 15). Contrary to Defendant's assertion, however, these requests do not seek "specific admissible evidence," but rather "any" and "all" documents, with references only to broad topics (such as "meetings and calls") or underlying source material, which justifies an inference that Defendant is engaging in a "fishing expedition." (*See* ECF No. 199-2 (requesting "*All* Communications . . . *all* documents relating to such communication. . . . *All* Communications and/or Documents relating to the decision to resolve liability on behalf of . . . *any* affiliated entity . . . *All* Documents relating to *any* interviews") (emphasis added)) *see also Mendinueta-Ibarro*, 956 F. Supp. 2d at 512–13 (granting a motion to quash because the request for "any and all writings and records" related to contact with a particular confidential witness was not specific enough to meet the *Nixon* standard). Despite several opportunities to elaborate upon these requests, Defendant has not explained in the subpoena, meetings, or in his opposition what relevant and non-duplicative evidence he is trying to obtain from BNYM's documents. (ECF No. 218-1, at 25) *see also Cuthbertson*, 630 F.2d at 146 (quashing subpoena when the defendant did not present an evidentiary use that such requests would have at trial, other than the "mere hope" that some exculpatory material might turn up). Based on this analysis, the Court determines that the broad language of Defendant's subpoena has not specifically identified the information he intends to gain and, therefore, the Court grants BNYM's Motion on specificity grounds.

### C. Admissibility

Requests Two (ConvergEx's motivation to cooperate) and Three (all interviews BNYM participated in regarding the investigation) can also be denied on admissibility grounds because

both requests fall under the work product doctrine and Defendant has not shown sufficient need. The final *Nixon* prong for the Court to address is admissibility, which appears as the work product doctrine in the current case. The work product doctrine covers "written materials obtained or prepared by an adversary's counsel with an eye toward litigation." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). This doctrine also applies to criminal cases. *United States v. Nobles*, 422 U.S. 225, 236 (1975). Work product includes "interviews, statements, memoranda, correspondence, briefs, mental impressions [and] personal beliefs." *Hickman*, 329 U.S. at 510.

Not all work product is free from discovery. *Id.* "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may be properly held." *Id.* An attorney's work product may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 592 (3d Cir. 1984) (superseded by statute on other grounds). The "burden rests on the one who would invade that privacy to establish adequate reasons to justify productions through a subpoena or court order." *Hickman*, 329 U.S. at 512. Even if a subpoenaing party can show substantial need, the producing party may still be entitled to redact "core" work product, *i.e.*, mental impressions and thought processes, from documents before its production. *See Bogosian*, 738 F.2d at 593.

The Court reaches four conclusions in regard to admissibility: (1) that Requests Two and Three contain privileged information under the work product doctrine; (2) that the privilege has not been waived; (3) that Defendant has not shown sufficient need; and (4) that BNYM should not have to produce redacted attorney notes. The Court addresses each of these conclusions in turn.

1. Privilege

The documents sought in Requests Two and Three are privileged under the work product doctrine. As stated above, the work product doctrine applies to "written materials obtained or prepared by an adversary's counsel with an eye toward litigation." *Hickman*, 329 U.S. at 511. To the extent Request Two seeks communications between RK&O and the attorneys for ConvergEx, both before and after they jointly represented ConvergEx, such discussions about cooperation would be textbook privileged communications. *See In re Teleglobe Commc'ns. Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) ("the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others.").

For Request Three, with respect to any communications among attorneys for BNYM pertaining to meetings between BNYM and the Government, this Court has already ruled that the same documents, in the context of attorneys for ConvergEx's communications, "clearly consist of work product as defined by the relevant case law." (ECF No. 197). There is no reason why this prior ruling should apply differently to BNYM considering the subpoena here is seeking identical information. Furthermore, to the extent that Request Three seeks memoranda of interviews not already shared with the Government, such memoranda are also protected under the work product doctrine. *Hickman*, 329 U.S. at 510 (work product includes "interviews, statements, *memoranda*, correspondence, briefs, mental impressions [and] personal beliefs.") (emphasis added). Accordingly, the Court finds that the documents in Requests Two and Three are privileged under the work product doctrine, requiring Defendant to show either waiver or a substantial need.

2. Waiver

The Court also finds that BNYM's work product doctrine protections have not been waived. A party claiming waiver of the work product doctrine bears the burden of establishing the alleged waiver. *La. Mun. Police Emp. Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008). Defendant raises two arguments for his claim that any privilege that applies to Requests Two and Three has been waived. First, BNYM waived its privilege because it did not provide the Court with a privilege log or the withheld materials for *in camera* review, as was required for the other non-parties in this case. (ECF No. 225, at 16). Second, BNYM has waived any privilege over notes or underlying materials that it disclosed to the Government. (*Id.*, at 17) (citing to *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414 (3d Cir. 1991) (finding attorney-client and work product privileges waived because of prior disclosure of privileged documents to governmental agency.))

The Court rejects these arguments. For Defendant's first argument, the prior *in camera* instructions to other non-parties has nothing to do with BNYM's assertion of privilege. If anything, this Court's previous determinations regarding privilege support its current finding in BNYM's favor. (*See, e.g.*, ECF No. 194 (finding that the internal attorney communications from the Government and ConvergEx were entitled to work product protection, emphasizing the importance of protecting indications of attorneys' thought processes and case strategy). For Defendant's second argument, BNYM already conceded that any information it handed to the Government is no longer privileged, (ECF No. 218-1, at 28), but that does not apply to the documents that BNYM did not share with the Government. *See United States v. Misquitta*, No. 10-185, 2011 U.S. Dist. LEXIS 37940, at *4 (W.D. Pa. Apr. 7, 2011) (distinguishing case from *Westinghouse* because the present subpoena was seeking information not fully disclosed to the

Government).[2] Therefore, the privilege shielding these documents has not been waived and Defendant can only enforce the subpoena if he shows a substantial need.

3. Substantial Need

The Court finds that Defendant has not shown a substantial need that outweighs the privilege afforded by the work product doctrine. The work product doctrine is a qualified privilege, which can be overcome if a defendant's needs overcome those of the subpoenaed party. *See Westinghouse*, 951 F.2d at 1429. A defendant who seeks to invade the work product protection bears the burden of "showing that [he] has *substantial need* of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Bogosian*, 738 F.2d at 592 (emphasis added). Here, Defendant claims his need for RK&O's work product, including underlying materials from communications between the attorney and the Government, is integral to the hearing because of BNYM's direct involvement in meetings between the Government and ConvergEx, which may expose more details to understand that relationship. (ECF No. 225, at 19).

However, as BNYM correctly points out, this argument does not explain why notes of the Government's communications with RK&O, when the firm was representing BNYM only, would be integral or even relevant to understanding the relationship between ConvergEx and the Government. (ECF No. 227, at 12). Moreover, as Defendant's request relate to the Government and ConvergEx's communications throughout all parts of the investigation, this Court has already ruled that Defendant could not show a substantial need for work product documents given the significant discovery already produced. (*See* ECF No. 194, at 5–6 (holding that Blumberg cannot

---

[2] As for the documents BNYM already produced to the government, it does not need to produce those documents to Defendant because he should already possess them for the reasons stated in *supra* A.1.

15

demonstrate "sufficient necessity" for the work product of the Government or Convergex in light of the fact that "the Government and Convergex have produced numerous documents that can and will assist the Defendant in assessing the relationship between the Government and Convergex")). The same logic from the Court's prior ruling applies to this case, where any relevant information Defendant can receive, from the time period RK&O was joint counsel or solely representing BNYM, is substantially similar to what has already been provided. (*See id.*, at 5). Accordingly, Defendant is unable to show a substantial need and cannot overcome the privilege afforded BNYM from the work product doctrine.

4. Redaction

The Court also concludes that BNYM should not have to redact its attorney notes considering Defendant has not demonstrated a substantial need. Courts have held when a work product document contains both facts and legal theories of the attorney, the materials should be produced with redactions to the portions believed to constitute "core" work product, *i.e.*, mental impressions and thought processes. *See Bogosian*, 738 F.2d at 593; *Peil v. Nat'l Semiconductor Corp.*, 105 F.R.D. 463, 465–67 (E.D. Pa. 1984) (ordering production of documents with core work product redacted). Even if Defendant cannot show a substantial need, he nonetheless claims that BNYM should redact its attorney's notes to the extent its documents contain factual or "non-core" work product.

The Court determines that Defendant's claim misunderstands the standard articulated in *Bogosian*, which was referring to attorney's notes that the subpoenaing party had already shown a substantial need for, but merited even greater protection for the producing party and thus allowed redaction. *See Bogosian*, 738 F.2d at 593. Here, Defendant has not made an initial showing of substantial need and so he has no basis to request that BNYM produce its work product, redacted

or not. Furthermore, even if Defendant was so entitled, this Court has already acknowledged that mere redaction may not be enough to protect attorney mental impressions. (ECF No. 194 ("[a]t times, what is written, what is left out and the way that the facts are framed can indicate an attorney's thought process.")). Based on this reasoning, Defendant is not entitled to BNYM's redacted work product. Therefore, the Court concludes that Request Two and Three are inadmissible under the work product doctrine and BNYM's Motion is granted.

## CONCLUSION

For the aforementioned reasons, BNYM's Motion is hereby granted. An appropriate Order accompanies this Opinion.

_____
**JOSE L. LINARES**
Chief Judge, United States District Court

Dated: October 30th, 2017